UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR MEDIA HOLDINGS, LLC and DEALERRATER.COM, LLC )<br><br>*Plaintiffs*, )<br><br>-v- )<br><br>TOP RATED ONLINE LLC, )<br><br>*Defendant*. )<br>_____) | <br><br><br><br><br>Civil Action No. _____<br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiffs DR Media Holdings, LLC ("DR Media Holdings") and DealerRater.com, LLC ("DealerRater"), (collectively, "Plaintiffs") allege as follows:

## PARTIES

1. Plaintiff DR Media Holdings is a Delaware limited liability company with its principal place of business in Waltham, Massachusetts.

2. Plaintiff DealerRater is a Massachusetts limited liability company with its principal place of business in Waltham, Massachusetts. DealerRater is a wholly-owned subsidiary of DR Media Holdings.

3. On information and belief, Defendant, Top Rated Online LLC ("Defendant"), is a limited liability company organized under the laws of the State of Michigan and having a registered agent at 11318 Hartland Road, Fenton, Michigan.

## JURISDICTION AND VENUE

4. Plaintiffs assert causes of action for service mark infringement under 15 U.S.C. § 1114(1), unfair competition under 15 U.S.C. § 1125(a), Commonwealth of Massachusetts common law trademark infringement and unfair competition, and violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A. This Court has subject matter jurisdiction because (1)

-2-

this action arises under the Trademark Act of 1946, as amended 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), and jurisdiction is specifically conferred by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338 (a) and (b); and (ii) this is an action between citizens of different states in which the value of the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332.  Jurisdiction for the violation of the Massachusetts Consumer Protection Act and Massachusetts common law trademark infringement and unfair competition claims is conferred in accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

5. This Court has personal jurisdiction over Defendant because it has transacted business within this judicial district, has sold and/or offered to sell infringing goods to residents of this district and therefore has committed acts of trademark infringement, unfair competition and deceptive trade practices in violation of the Massachusetts Consumer Protection Act within this judicial district.

6. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2).  Defendant has committed acts of trademark infringement, unfair competition and deceptive trade practices in violation of the Massachusetts Consumer Protection Act within this judicial district, thereby causing injury to Plaintiffs in this judicial district, by sending commercial advertisements to residents of this judicial district and selling or offering to sell infringing goods to residents of this judicial district.

## **FACTS**

### Plaintiffs' Valuable DEALERRATER Marks

7. For almost fifteen years, DR Media Holdings has operated a website located at www.dealerrater.com which prominently features the DEALERRATER mark (the "DealerRater

Web Site"). The DealerRater Web Site is a leader in the field of automotive consumer review web sites. The DealerRater Web Site allows consumers to search for consumer reviews on automotive dealers and service centers. The DealerRater Web Site also provides information about automobiles, including but not limited to, automobiles for sale at various dealers and automobile recalls.

8. With thousands of consumer reviews, the DealerRater Web Site has become a leading destination for consumers and automotive dealers to navigate every aspect of consumer reviews of automobile dealers.

9. Since at least as early as November 2002, Plaintiffs and their predecessors have continuously used the mark DEALERRATER in connection with the promotion, marketing, and operation of the DealerRater Web Site.

10. DealerRater publishes and distributes annual DEALERRATER "Dealer of the Year" awards and DEALERRATER "Customer Satisfaction Award[s]," (collectively, "DealerRater Awards"), which identify and honor car dealerships throughout the nation that have displayed outstanding customer satisfaction as expressed through customers' online reviews posted on the DealerRater Web Site.

11. On the DealerRater Web Site, each car dealership has a profile page. If the dealership has been awarded one of the DealerRater Awards, the DealerRater Web Site will display a commemorative badge on the dealership's profile page. These badges list the award, the year, and the DEALERRATER mark. A representative example of a badge that is displayed on a dealership's profile page for a DEALERRATER "Dealer of the Year" award is pictured below.



A representative example of a commemorative badge that is displayed on a dealership's profile page for the DEALERRATER "Customer Satisfaction Award" is pictured below.



12.     Car dealerships that have received one of the DealerRater Awards are able to purchase trophies from DealerRater that commemorate the award to display in their car dealership showrooms.  These trophies include the award, the year, and the DEALERRATER mark.  A representative example of a DEALERRATER "Dealer of the Year" award trophy is pictured below.



A representative example of a DEALERRATER "Customer Satisfaction Award" trophy is pictured below.



13. DR Media Holdings owns numerous federal trademark and certification mark registrations on the Principal Register of the United States Patent and Trademark Office, including the following:

| MARK | U.S. REG. NO. | U.S. REG. DATE | GOODS/SERVICES |
|---|---|---|---|
| **DEALERRATER** | 4,803,777 | 09/01/2015 | Providing online information services featuring reviews and ratings of motor vehicle dealerships and motor vehicles posted by users, motor vehicle news and recalls, motor vehicle classified advertisements, and motor vehicle dealerships; marketing services, namely, conducting consumer tracking behavior research and consumer trend analysis in International Class 35; |
| (DealerRater logo) | 3,873,182 | 11/09/2010 | Providing online information services featuring reviews and ratings of motor vehicle dealerships and motor vehicles posted by users, motor vehicle news and recalls, motor vehicle classified advertisements, and motor vehicle dealership inventories; providing website space for advertising goods and services of motor vehicle dealerships in International Class 35; |
| (DealerRater REVIEWS DRIVE BUSINESS logo) | 4,558,329 | 07/01/2014 | Providing online information services featuring reviews and ratings of motor vehicle dealerships and motor vehicles posted by users, motor vehicle news and recalls, motor vehicle classified advertisements, and motor vehicle dealership inventories; providing website space for advertising goods and services of motor vehicle dealerships; marketing services, namely, conducting consumer tracking behavior research and consumer trend analysis in International Class 35; |
| **DEALERRATER** (certification mark) | 3,885,725 | 12/07/2010 | Automobile dealership services in International Class B |

(collectively, the "DEALERRATER Marks").  True and correct copies of the Trademark Electronic Search System records for the DEALERRATER Marks are attached as **Exhibit A**.

14.     U.S. Registration Nos. 3,873,182, and 3,885,725 have become incontestable in accordance with 15 U.S.C. §§1065 and 1115(b) and, accordingly, constitute conclusive evidence of DR Media Holdings' exclusive right to use the marks throughout the United States.

15.     Plaintiffs have spent millions of dollars advertising and marketing their services under the DEALERRATER Marks.

16.     As a result of the Plaintiffs' extensive advertising and use of the DEALERRATER Marks, the DEALERRATER Marks have become well known, are associated solely with DR Media Holdings, and represent goodwill of extraordinary value owned by DR Media Holdings.

17.     The DEALERRATER Marks are distinctive and well known, and acquired such distinction and renown long before Defendant commenced any of the wrongful conduct set forth below.

<u>Defendant's Infringing Use of the DEALERRATER Mark</u>

18.     Defendant is in the business of offering wall plaques, banners, electronic displays, and window clings.

19.     When a company receives an award or accolade from an unrelated entity or organization, Defendant solicits that company to purchase a display of the achievement, without regard to the intellectual property rights of the organization conferring the achievement.

20.     An example of Defendant's infringing activity is the following:

   a)     One of the winners of the 2018 DEALERRATER "Customer Satisfaction Award" was a car dealership located in Michigan.

      b)      Shortly after DR Media Holdings announced that the dealership was a winner of the 2018 DEALERRATER "Customer Satisfaction Award," Defendant contacted the dealership, offering to sell it a DEALERRATER wall plaque and electronic plaque for its 2018 DEALERRATER "Customer Satisfaction Award."  (A redacted copy of the solicitation is attached as **Exhibit B**).

      c)      The subject line of Defendant's solicitation email was "DealerRater Display Plaque."  *See* **Exhibit B**.

21.    Another example of Defendant's infringing activity is the following:

      a)      One of the winners of the 2018 DealerRater Awards was a car dealership located in Tennessee.

      b)      Shortly after DR Media Holdings announced that the dealership was a winner of the 2018 DealerRater Awards, Defendant contacted the dealership, offering to sell it a DEALERRATER wall plaque and electronic plaque for its 2018 DealerRater Awards.

      c)      The dealership purchased a DEALERRATER wall plaque from Defendant.  (A redacted copy of the invoice is attached as **Exhibit C**.)  On the invoice, the plaque is listed as "Custom Display Plaque (11x13 DealerRater)".

22.    Yet another example of Defendant's infringing activity is:

      a)      One of the winners of the 2018 DealerRater Awards was a car dealership located in Rhode Island.

      b)     Shortly after DR Media Holdings announced that the dealership was a winner of the 2018 DealerRater Awards, Defendant contacted the dealership, offering to sell it a DEALERRATER plaque for its 2018 DealerRater Awards.

      c)     The dealership purchased a DEALERRATER wall plaque from Defendant.  (A redacted copy of the invoice is attached as **Exhibit D**.)  On the invoice, the plaque is listed as "DealerRater Display Plaque".

23.     Defendant has made similar solicitations to other winners of the DealerRater Awards, including dealerships located in Massachusetts.

<u>Defendant's Infringements of the DEALERRATER Mark</u>

24.     Defendant's use of the DEALERRATER mark is identical or confusingly similar, both visually and phonetically, to Plaintiffs' DEALERRATER Marks.

25.     Defendant's use of the DEALERRATER mark, directed specifically at winners of the DealerRater Awards, causes a likelihood of confusion, deception, and mistake as to the affiliation, connection, or association of Defendant with Plaintiffs, the DealerRater Web Site, and the DEALERRATER "Dealer of the Year" and "Customer Satisfaction Award" competitions.

26.     Defendant's goods offered under the DEALERRATER mark are identical to some of Plaintiffs' goods offered under the DEALERRATER Marks.  For example, Plaintiffs and Defendant both offer displays of achievement featuring the DEALERRATER mark to automotive dealers.

27.     Defendant does not own any trademark or other intellectual property rights in the DEALERRATER mark.

28. Defendant is using Plaintiffs' DEALERRATER mark without Plaintiffs' permission.

29. Plaintiffs have already been informed of at least one instance of actual confusion arising out of Defendant's unauthorized use of the DEALERRATER mark.

### Defendant's Infringing Use of DEALERRATER Is Willful

30. Defendant adopted, and continues to use, Plaintiffs' DEALERRATER mark with actual knowledge of Plaintiffs' prior rights in the DEALERRATER Marks.

31. On February 12, 2016, Plaintiffs' counsel sent a letter to Defendant demanding that it cease use of the DEALERRATER mark in connection with displays of achievement for automobile dealers.  A true and correct copy of this correspondence is attached as **Exhibit E**.

32. On February 16, 2016, Defendant's counsel responded to Plaintiffs' counsel.  A true and correct copy of this correspondence is attached as **Exhibit F**.

33. On February 17, 2016, Defendant's counsel responded to Plaintiffs' counsel, stating the Defendant was not using the DEALERRATER mark "in any capacity."  A true and correct copy of this correspondence is attached as **Exhibit G**.

34. In 2017, Plaintiffs discovered that Defendant again solicited automotive dealerships that had won the 2017 DealerRater Awards to purchase DEALERRATER displays of achievement from Defendant.

35. On February 27, 2017, Plaintiffs' counsel sent a letter to Defendant demanding that it cease use of the DEALERRATER mark in connection with displays of achievement for automobile dealers.  A true and correct copy of this letter is attached as **Exhibit H**.

36.     Plaintiffs recently discovered that Defendant made further solicitations to automotive dealerships that had won the 2018 DealerRater Awards to purchase DEALERRATER displays of achievement from Defendant.

37.     On February 19, 2018, Plaintiffs' counsel sent a letter to Defendant demanding that it cease use of the DEALERRATER mark in connection with displays of achievement for automobile dealers.  A true and correct copy of this letter is attached as **Exhibit I**.

38.     On information and belief, as of the filing of this Complaint, Defendant continues to use the DEALERRATER mark to solicit and offer to sell displays of achievement to automotive dealerships that have won the DealerRater Awards.

39.     Defendant's continued use of the DEALERRATER mark, despite Defendant's actual knowledge of Plaintiffs' rights in the DEALERRATER Marks, constitutes a deliberate, intentional, and willful attempt to trade upon Plaintiffs' business reputation and goodwill in the DEALERRATER Marks.

**FIRST CAUSE OF ACTION**

**Trademark Infringement – 15 U.S.C. § 1114**

40.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 39 above as if fully set forth herein.

41.     Defendant's unauthorized use of the DEALERRATER mark in commerce is likely to cause confusion, or to cause mistake or to deceive.

42.     Defendant's use of the DEALERRATER mark is, upon information and belief, committed with knowledge that such imitation is intended to cause confusion, or to cause mistake, or to deceive.

43.     Defendant's acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44. As a direct and proximate result of this trademark infringement, Plaintiffs have suffered and are suffering irreparable injury. Plaintiffs will continue to suffer irreparable injury unless the Court enters an appropriate injunction.

45. As a direct and proximate result of this trademark infringement, Plaintiffs have suffered and are suffering monetary damages in an amount to be determined.

46. The willful and intentional nature of Defendant's trademark infringement makes this an exceptional case under 15 U.S.C. § 1117(a).

## SECOND CAUSE OF ACTION

### False Designation of Origin – 15 U.S.C. § 1125(a)

47. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 39 above as if fully set forth herein.

48. Defendant's unauthorized use of the DEALERRATER mark falsely suggests that it is affiliated, connected, or associated with Plaintiffs, or that Defendant's goods originate from, or are sponsored or approved by, Plaintiffs.

49. Defendant's unauthorized use of the DEALERRATER mark constitutes a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50. As a direct and proximate result of this false designation of origin, Plaintiffs have suffered and are suffering irreparable injury. Plaintiffs will continue to suffer irreparable injury unless the Court enters an appropriate injunction.

51. As a direct and proximate result of this false designation of origin, Plaintiffs have suffered and are suffering monetary damages in an amount to be determined.

52. The willful and intentional nature of Defendant's false designation of origin makes this an exceptional case under 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION

### Common Law Trademark Infringement

53.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 39 as if fully set forth herein.

54.     Defendant's unauthorized use of the DEALERRATER mark constitutes trademark infringement under the common law of the Commonwealth of Massachusetts.

55.     As a direct and proximate result of this common law trademark infringement, Plaintiffs have suffered and are suffering irreparable injury.  Plaintiffs will continue to suffer irreparable injury unless the Court enters an appropriate injunction.

56.     As a direct and proximate result of this common law trademark infringement, Plaintiffs have suffered monetary damages in an amount to be determined.

## FOURTH CAUSE OF ACTION

### Common Law Unfair Competition

57.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 39 above as if fully set forth herein.

58.     Defendant's misconduct alleged herein constitutes unfair competition under the common law of the Commonwealth of Massachusetts.

59.     As a direct and proximate result of the unfair competition, Plaintiffs have suffered and are suffering irreparable injury.  Plaintiffs will continue to suffer irreparable injury unless the Court enters an appropriate injunction.

60.     As a direct and proximate result of this unfair competition, Plaintiffs have suffered and are suffering monetary damages in an amount to be determined.

## FIFTH CAUSE OF ACTION

### Violation of Massachusetts Consumer Protection Act – M.G.L. c. 93A

61. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 39 above as if fully set forth herein.

62. Defendant's misconduct alleged herein constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, M.G. L.c. 93A, §§ 2 and 11.

63. Upon information and belief, Defendant engaged in these unfair and/or deceptive methods and acts willfully, with bad faith, and with knowledge of Plaintiffs' rights.

64. As a direct and proximate result of these unfair and/or deceptive methods and acts, Plaintiffs have suffered and are suffering irreparable injury. Plaintiffs will continue to suffer irreparable injury unless the Court enters an appropriate injunction.

65. As a direct and proximate result of these unfair and/or deceptive methods and acts, Plaintiffs have suffered and are suffering monetary damages in an amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. A judgment enjoining Defendant, and all other persons, firms, or corporations acting in concert or participation with Defendant, from using or offering products or services bearing the DEALERRATER Marks or any other mark that is confusingly similar to the DEALERRATER Marks.

2. A judgment ordering Defendant, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve upon Plaintiffs within thirty (30) days after the entry of the injunction, a report

in writing under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction.

       3.       That Defendant be directed to deliver or destroy all devices, literature, advertising, or other materials bearing the DEALERRATER Marks or any confusingly similar designation alone or in connection with other words.

       4.       A judgment that Defendant account for and disgorge to Plaintiffs all of Defendant's profits resulting from its act of trademark infringement, false designation of origin, and unfair competition.

       5.       A judgment that Plaintiffs be awarded damages, plus interest, in an amount to be determined.

       6.       A judgment that Plaintiffs be awarded enhanced damages, up to three times its actual damages, pursuant to 15 U.S.C. § 1117(a) and the Massachusetts Consumer Protection Act (M.G.L. c. 93A, § 2, 11).

       7.       A judgment that Plaintiffs be awarded their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), the Massachusetts Consumer Protection Act (M.G.L. c. 93A, § 11), and the common law of the Commonwealth of Massachusetts.

       8.       A judgment that Plaintiffs recover their cost of this action plus interest pursuant to 15 U.S.C. § 1117(a), the Massachusetts Consumer Protection Act (M.G.L. c. 93A, § 11), and the common law of the Commonwealth of Massachusetts.

       9.       A judgment that Plaintiffs be granted such other and further relief as the Court deems just and proper.

DATED: June 4, 2018                    Respectfully submitted,

/s/ Christine R. Fitzgerald
Christine R. Fitzgerald BBO #637906
Belcher Fitzgerald LLP
Two Oliver Street, Suite 302
Boston, Massachusetts 02110
Telephone: (617) 368-6890
Facsimile: (617) 368-6891
cfitzgerald@belcherfitzgerald.com


Thad Chaloemtiarana*
Ashly I. Boesche*
Jacquelyn R. McPeak*
PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD & GERALDSON LLP
200 South Wacker Drive, Suite 2900
Chicago, Illinois 60606
Telephone: (312) 554-8000
Facsimile: (312) 554-8015
tc@pattishall.com
jrp@pattishall.com

*Attorneys for Plaintiffs DR Media Holdings, LLC and Dealerrater.com, LLC*
*\* Not admitted in District of Massachusetts*